# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

MARLA MOXLEY,          )
                                     )
             Petitioner,      )
                                     )
v.                               )        **Case No. 13-501-JHP-KEW**
                                     )
**DEBBIE ALDRIDGE, Warden,**  )
                                     )
             Respondent.     )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, a pro se prisoner currently incarcerated at Mabel Bassett Correctional Center in McLoud, Oklahoma, attacks her conviction in Pontotoc County District Court Case No. CF-2010-63 for Second Degree Murder. She sets forth the following grounds for relief:

    I.      Petitioner's right to confront witness was denied when Dr. Pfeifer testified about Dr. Tarau's autopsy report.

    II.     Petitioner's right to confront witness was violated when Dr. Curtis testified about Dr. Griffin's toxicology report.

    III.    The trial court erred when it ruled that admission of evidence was harmless error, in violation of the Confrontation Clause.

    IV.    Petitioner's constitutional right to a fair trial was violated by the admission of evidence of irrelevant and highly prejudicial bad acts and other crimes.

    V.     Substantial error violated Petitioner's Fourteenth Amendment rights when the State was permitted to introduce bad character evidence of Petitioner and good character evidence of the deceased.

VI.   Petitioner was deprived of a fair trial in violation of her Fourteenth Amendment rights when the trial court did not allow the jury to consider the lesser-included offense of manslaughter.

VII.  Petitioner was denied her right for jury instructions in accordance with her theory of defense.

VIII. Petitioner's due process was violated when State failed to prove her acts caused the death of the victim.

IX.   Petitioner was denied effective counsel when counsel failed to preserve serious errors for appeal.

X.    Accumulation of errors guaranteed conviction, depriving Petitioner of her right to due process and requiring reversal.

Respondent concedes that Petitioner has exhausted her state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the Court for consideration in this matter:

A.    Petitioner's direct appeal brief.

B.    The State's brief in Petitioner's direct appeal.

C.    Summary Opinion affirming Petitioner's Judgment and Sentence. *Moxley v. State*, No. F-2011-900 (Okla. Crim. App. Jan. 8, 2013).

D.    Jury trial and sentencing transcripts.

D.    State court record.

Petitioner has not filed a reply to Respondent's response.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

On February 14, 2010, Officer Michael Jackson of the Ada Police Department responded to a dispatch arising from a 911 call (Tr. 219). The caller, who was Petitioner's neighbor, reported that he thought Petitioner had pulled out her father Samuel Moxley's breathing tube. *Id.* Officer Jackson entered Samuel Moxley's residence and saw debris on the floor and the house in disarray (Tr. 220-21). He found Samuel Moxley on the bathroom floor (Tr. 221). Mr. Moxley was not breathing, and his tracheostomy tube was in the bathroom sink (Tr. 222, 239).

Captain Aaron Gray found Petitioner in the laundry room (Tr. 223-24). She appeared to be very intoxicated and told the officers to get out of the house. *Id.* She stated she had started drinking after she and her father had a fight (Tr. 224). She admitted pulling out her father's tracheostomy tube, but said she did not mean to do it. *Id.* Mr. Moxley died of asphyxia resulting from the removal of his tracheostomy tube (Tr. 324).

**Ground I:  Dr. Pfeifer's Testimony**

Petitioner alleges the introduction by Dr. Eric Pfeifer, the Chief Medical Examiner for the State of Oklahoma, of the contents of Dr. Maurice Taran's autopsy report violated her

rights under the Confrontation Clause. She asserts the State did not show that Dr. Taran was unavailable to testify and that she was provided a previous opportunity to cross examine him.[1] The Oklahoma Court of Criminal Appeals ("OCCA") did not address whether the Confrontation Clause claim was meritorious, instead presuming error and finding it harmless:

> . . . Moxley had a right to cross-examine the person who prepared the original autopsy report if anyone testified as to its contents, and Dr. Pfeifer could not testify to the contents of Dr. Tarau's report. *Cuesta-Rodriguez v. State*, 241 6P.3d 214, 228 (Okla. Crim. App. 2010); *Marshall v. State*, 232 P.3d 467, 475 (Okla. Crim. App. 2010); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009); *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). Without objection, Pfeifer was qualified as an expert witness. An expert may testify if his specialized knowledge will assist the trier of fact to determine a fact in issue, as long as his testimony (a) is based on sufficient facts or data, (b) is the product of reliable principles and methods; and (c) the witness applies those principles and methods to the facts of the case. Okla. Stat. tit. 12, § 2702. An expert may rely on inadmissible facts or data in forming opinions, as long as those inadmissible facts or data are not disclosed to the jury. Okla. Stat. tit. 12, § 2703. Expert witness testimony must be confined to the expert's own opinions and the expert must be available for cross-examination. *Marshall*, 232 P.3d at 475.
>
> Moxley's argument . . . depends on her claim that, rather than testifying as an expert, Pfeifer's testimony was inextricable from Tarau's autopsy report and she should have been allowed to cross-examine Tarau regarding the report. In *Cuesta-Rodriguez*, we found that an expert witness could not testify as to his own observations made from an autopsy report, where portions of the original autopsy report were admitted into evidence and disclosed to the jury. *Cuesta-Rodriguez*, 241 P.3d at 229. Moxley's case differs because the contents of the

---

[1] The defense unsuccessfully attempted to subpoena Dr. Taurau for the preliminary hearing (O.R. I 40-77; PH Tr. 28-32). Prior to trial, the State informed the defense that Dr. Tarau no longer was employed by the medical examiner's office, and he refused to return to Oklahoma to testify in this case (O.R. 118-20). Citing Sixth Amendment grounds, the defense filed a motion to suppress any testimony from the medical examiner's office and, in the alternative, a motion in limine to prohibit Dr. Pfeifer from testifying in Dr. Tarau's place. *Id.* This issue was argued at trial prior to Dr. Pfeifer's testimony, and the defense motion was denied with respect to Samuel Moxley's tracheostomy and cause of death (Tr. 297-303).

original report were neither admitted into evidence nor disclosed to the jury. For purposes of this case, assuming without deciding that Moxley is correct, we find that any error in admitting Pfeifer's testimony was harmless. After reviewing all the evidence admitted regarding the cause of death and Moxley's involvement, we are satisfied beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Cuesta-Rodriguez*, 241 P.3d at 230.

*Moxley v. State*, No. F-2011-900, slip op. at 3-4 (Okla. Crim. App. Jan. 8, 2013).[2]

Respondent alleges this ground for relief is an issue of state evidentiary law, and federal habeas review is not available to correct state-law evidentiary errors. *See Grant v. Trammell*, 727 F.3d 1006, 1013 (10th Cir. 2013) ("Matters of state law are theirs, not ours, to answer.") (citing 28 U.S.C. § 2254(a); *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999)), *cert. denied*, __ U.S. __, 134 S.Ct. 2731 528 U.S. 1167 (2014). *See also Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999).

The Supreme Court has held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" from *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Confrontation Clause errors are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Federal habeas review must determine "whether, assuming that the damaging potential of cross-examination were

---

[2] The OCCA noted the Petitioner had suggested her position was confirmed by the plurality opinion in *Williams v. Illinois*, 567 U.S. 50 (2012). The OCCA, however, described *Williams* as a "complex case" which is "somewhat murky and inconclusive" and declined "to speculate what the *Williams* Court would hold in [Petitioner's] case." *Moxley*, slip op. at 3 n.1. The Tenth Circuit recently "express[ed] no view as to whether the plurality opinion should be treated as controlling." *Jimenez v. Allbaugh*, No. 17-6077, __ Fed. App'x __, 2017 WL 3081121, at *2 (10th Cir. July 19, 2017).

fully realized, a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict." *Littlejohn v. Trammell*, 704 F.3d 817, 844-45 (10th Cir. 2013) (quoting *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000)). Habeas courts conduct harmless error review *de novo*, and must consider factors such as the "importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.* (quoting *Van Arsdall*, 475 U.S. at 684).

Dr. Pfeifer testified that after reviewing the autopsy report and related notations and photographs, his opinion was that Mr. Moxley died of asphyxia, meaning a lack of oxygen resulting from the removal of his tracheostomy tube (Tr. 324-25). Dr. Pfeifer explained the different types of tracheostomy tubes and their function in sealing the airway (Tr. 325-26). He also described the symptoms of asphyxia (Tr. 327-28). He opined that the autopsy was "quite thorough," and he looked at the report during his testimony to confirm there was no evidence that Mr. Moxley had a seizure (Tr. 330-32). The autopsy report eliminated lethal trauma, heart attack, pulmonary embolism, hemorrhagic stroke, certain drugs, or toxins (Tr. 334-35).

As stated by the OCCA, the autopsy report was not admitted into evidence or disclosed to the jury, and Dr. Pfeifer did not recite Dr. Tarau's descriptions or conclusions in the report. Instead, Dr. Pfeifer testified he had reached his own opinion about the cause

of Mr. Moxley's death (Tr. 324).

The OCCA also made additional factual finding about testimony from other witnesses concerning Mr. Moxley's cause of death:

> Several witnesses testified that Moxley admitted pulling out the victim's tracheotomy [sic] tube. Jurors saw the videotape of Moxley admitting she pulled out the tube. Two witnesses testified Moxley was aware that the victim could not breathe, and might die, if the tube was removed. Moxley called 911 but did not offer any further help to the victim, although she returned to the house where he was dying. The cause of death was asphyxiation after the tracheotomy tube was removed. The record does not support Moxley's claim that other, intervening factors could have caused the victim's death.

*Moxley*, slip op. at 8. The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

After careful review of the record, this Court finds that while Dr. Pfeifer's testimony was important to the prosecution's case, the testimony was cumulative to the other evidence before the jury. The prosecution had a strong case against Petitioner, Dr. Pfeifer was cross-examined, and other evidence corroborated Dr. Pfeifer's testimony. The Court further finds Dr. Pfeifer's testimony did not have a substantial and injurious effect or influence on the jury's verdict.

Applying these principles, the Court finds the determination of this issue by the OCCA was not contrary to, or an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). The Court further finds the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.  28 U.S.C. § 2254(d)(2).  Ground I of the petition fails.

**Ground II:  Dr. Curtis's Testimony**

Petitioner argues in Ground II that Dr. Byron Curtis's testimony about Mike Griffin's toxicology report (State's Exhibit 48, Dkt. 10-5) was admitted in violation of the Confrontation Clause.  Chemist Mike Griffin, who performed the toxicology report on the victim's blood, did not testify, and no reason for his absence was given.  Instead, Dr. Byron Curtis, Chief Forensic Toxicologist for the Office of the Medical Examiner, testified about the contents of Griffin's report.  Because no objection was made to Dr. Curtis's testimony, the OCCA reviewed the issue for plain error:

> We find . . . the trial court did not abuse its discretion in admitting Curtis's testimony.  Moxley did not object to this evidence at trial and we review for plain error.  *Simpson v. State*, 876 P.2d 690, 694 (Okla. Crim. App. 1994); Okla. Stat. tit. 20, § 3001.1 (2011).  There is none.  The Confrontation Clause prohibits introduction of a forensic laboratory report, for the purpose of proving a test, through testimony of a scientist who neither signed the test certification, nor performed or observed the test requirement.  *Bullcoming v. New Mexico*, 564 U.S. 647, __, 131 S.Ct. 2705, 2719 (2011).  As Justice Sotomayor noted in her separate opinion, the plurality holding is limited.  She says, "This is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue.  . . . It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results."  *Bullcoming*, 564 U.S. at 672-73 (Sotomayor, J., concurring in part).  Curtis, acting as Griffin's supervisor, reviewed the test results for accuracy and completeness and signed off on them.  Admission of his testimony did not violate Moxley's right to confront witnesses.

*Moxley*, slip op. at 4-5.

The evidence at trial reflected that Petitioner told the police that Mr. Moxley was drinking (State's Exhibit 33).  The toxicology report, however, showed he had no alcohol in

8

his system when he died, negating the possibility that alcohol consumption contributed to his death (State's Exhibit 48).

Dr. Curtis testified that he functioned as the lab director (Tr. 378). He usually did not perform an actual analysis of a specimen, but he reviewed the toxicology reports for completeness and accuracy and signed off on them, which is what he did with Mr. Moxley's report (Tr. 378-79). Dr. Curtis did not read the content of the report to the jury, nor did he testify regarding any conclusions made by Griffin. His review of the data in the report resulted in his opinion that there was no alcohol in Mr. Moxley's blood (Tr. 380).

Petitioner disputes the OCCA's factual finding that Curtis was Griffin's supervisor, claiming all that Curtis did was review Griffin's report and sign off on it. The Court, however, finds Petitioner's assertion is insufficient to overcome the OCCA's factual finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e).

After careful review, the Court finds the OCCA's decision of the claim in Ground II was not based on an unreasonable determination of the facts presented at trial, and the decision was consistent with Supreme Court law. 28 U.S.C. § 2254(d). This ground for relief is meritless.

As an additional matter, Petitioner requests that Mr. Moxley's blood sample be tested again for the presence of alcohol and drugs. "[A] federal court has the power and authority to dispose of habeas corpus matters as law and justice require." *Paxton v. Ward*, 199 F.3d 1197, 1219-20 (10th Cir. 1999) (internal citation omitted). In this case, however, the Court finds further testing is not required by law or justice.

**Ground III:  911 Recording**

Petitioner next challenges the admission of the audio recording of Samuel Moxley's 911 call seeking assistance on January 23, 2010, approximately three weeks before his death. (Tr. 447-49; State's Exhibit 34).  Petitioner asserted on direct appeal that the statements on the recording were hearsay, and the admission violated her right to confront witnesses against her.  Respondent alleges the OCCA properly found that the admission of the 911 recording was harmless, despite the fact it was not properly sponsored prior to its admission into evidence.

In response to the 911 call, the police were dispatched and found Mr. Moxley holding the tracheostomy tube in his throat with his hand and needing help to reattach it (Tr. 309-13, 318-19).  Ada Police Officer Richard Hubble asked Petitioner to help with the tube, but she refused (Tr. 312).  The officer then called the Fire Department for assistance.  *Id.*

Officer Hubble testified Petitioner was "very uncooperative" and "very aggressive," and she said she had been drinking and taking medication (Tr. 313).  At Mr. Moxley's request, the police placed Petitioner under a "citizen's arrest" with Samuel Moxley as the complainant (Tr. 316).  Petitioner later told her mother Kay Bailey in a telephone conversation that she had pulled out Mr. Moxley's tracheostomy tube in retaliation for something (Tr. 363).  Bailey asked Petitioner how she could have done that, considering that the tube was Mr. Moxley's life support, but Bailey could not remember Petitioner's response (Tr. 363-64).

In the course of his testimony on direct examination, Detective Tracy Jackson was

asked to identify and sponsor State's Exhibit 34, the audio recording of Samuel Moxley's

911 call on January 23, 2010 (Tr. 447-48). The prosecution sought to admit the recording

under the business records exception to the hearsay evidence rule, Okla. Stat. tit. 12, §

2803(6) (2011) (Tr. 448-49). Defense counsel objected to admission of the recording on the

grounds that Detective Jackson was not qualified to sponsor the exhibit and because it

contained rank hearsay from the deceased victim and an absent dispatcher, two witnesses

who Petitioner could not confront (Tr. 448-49). The trial court overruled the defense

objections and admitted the recording in its entirety (Tr. 449). It then was played to the jury.

*Id.*

Petitioner argued on appeal that the recording was highly prejudicial with minimal

probative value. Because Sam Moxley was whispering over the telephone, the listener had

to rely on the statements of the dispatcher who repeated what Moxley was believed to be

saying. Mr. Moxley complained that his daughter had attacked him, and she had kicked out

an interior door. An officer arrived about 11 minutes into the recording.

The OCCA found any error in admission of the recording was harmless:

> We find the 911 tape of the January 23, 2010, incident should not have been
> sponsored by Detective Jackson under the business records exception to the
> hearsay rule. Okla. Stat. tit. 12, § 2803(6). The exception requires a witness
> who is able to testify that the report was in fact made at or near the time and
> by, or from information transmitted by, a person with knowledge of the
> circumstances reported. *Perry v. State*, 893 P.2d 521, 526 (Okla. Crim. App.
> 1995); *Jones v. State*, 660 P.2d 634, 643 (Okla. Crim. App. 1983). This means
> someone, not necessarily the person who created the record, who can testify
> as to what the records mean and represent. *Middaugh v. State*, 767 P.2d 432,
> 436 (Okla. Crim. App. 1988); *Tinney v. State*, 712 P.2d 65, 67 (1985).
> Detective Jackson did not have this knowledge. This error does not require

11

relief.  The tape itself was not testimonial hearsay and might have been admissible if properly sponsored.  *Davis v. Washington*, 547 U.S. 813, 827-28 (2006).  Other witnesses testified regarding the victim's and Moxley's statements, actions and demeanor immediately after the events on the tape.  Any error in admitting the tape through Detective Jackson was harmless.  Okla. Stat. tit. 20, § 3001.1.

*Moxley*, slip op. at 5-6.

As discussed above, the standard under which a conviction must be set aside on habeas review is whether the prejudicial impact of constitutional error in a state-court criminal trial "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637; *Fry*, 551 U.S. at 121.  The Court finds the recording reflects that Mr. Moxley called to obtain police assistance because of an immediate emergency.  It revealed his then-existing emotional and physical conditions and specifically rebutted Petitioner's defenses of self-defense and accident.  The recording further supports the OCCA's determination that the tape was cumulative to the other witnesses at trial.  Petitioner has failed to show the prejudicial impact of this error had a substantial and injurious effect on the evidence.  The Court, therefore, finds the OCCA's decision was not contrary to, or an unreasonable application of Supreme Court law, and the decision was not based on an unreasonable determination of the facts presented at trial.  28 U.S.C. § 2254(d).  Ground III of the petition does not warrant relief.

**Ground IV:  Other Crimes Evidence**

Petitioner alleges improper evidence of other crimes and bad acts was improperly admitted at trial, and any probative value was substantially outweighed by its prejudicial

effect. She specifically claims the following evidence should not have been admitted: (1) Mr. Moxley's 911 recording from January 23, 2010; (2) the testimony of Assistant Fire Chief Robby Johnson and Ada Police Officer Richard Hubble describing their observations of the January 23, 2010, incident; and (3) the testimony of Melinda Moxley regarding a prior altercation between Petitioner and the victim. The OCCA denied relief on this claim:

> We find . . . the trial court did not abuse its discretion in admitting other crimes evidence regarding the January 23, 2010, incident, and there was no plain error in admitting the evidence to which Moxley did not object. *Williams v. State*, 188 P.3d 208, 218 (Okla. Crim. App. 2008). The evidence was properly admitted to show intent, knowledge, and absence of mistake or accident. *Marshall v. State*, 232 P.3d 467, 477 (Okla. Crim. App. 2010); *Williams*, 188 P.3d at 218; Okla. Stat. tit. 12, § 2404(B). We further find that the trial court cured the error caused by mention of a possible prior incident of abuse when the court sustained Moxley's objection of the testimony. *Harmon v. State*, 248 P.3d 918, 935 (Okla. Crim. App. 2011).

*Moxley*, slip op. at 6. Respondent asserts this ground for relief fails to raise a claim proper for federal habeas review, and Petitioner has failed to show that the evidence denied her a fundamentally fair trial.

In Oklahoma, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, § 2404(B). *See also Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047 (1980) (citation omitted) ("Such evidence . . . 'may be admitted to prove intent, identity, motive, absence of mistake, and common scheme or plan embracing both crimes where proof

13

of one tends to establish the other.'"). "State court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee*, 608 F.2d at 850.

The question for the habeas court in this case is not whether the other crimes evidence was admissible under state law, "but instead whether, considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2001) (citations omitted); *Warner v. Workman*, 814 F.Supp. 2d 1188, 1224 (W.D. Okla. 2011) ("The OCCA's conclusion that the evidence did not fall under Okla. Stat. tit. 12, § 2404(B) is a state evidentiary decision that is outside the scope of habeas review.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)), *aff'd*, 520 Fed. App'x 675 (2013).

In Petitioner's case, as with *Warner*, the OCCA found the evidence was properly admitted under a state evidentiary exception to the introduction of other crimes or bad acts. This Court must give considerable deference to state evidentiary rulings, and habeas relief may not be granted unless the evidentiary rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002), *cert. denied*, 538 U.S. 1004 (2003).

In *Welch v. Sirmons*, 451 F.3d 675, 688 (10th Cir. 2006), *overruled on other grounds by Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009), the Tenth Circuit found that clearly established federal law governing habeas review of other crimes evidence is found in the Due Process Clause, providing a mechanism for relief "when evidence that is so unduly

14

prejudicial that it renders the trial fundamentally unfair." The Tenth Circuit also acknowledged that Oklahoma's rules on other crimes evidence are consistent with federal constitutional principles "in that they acknowledge the prejudice associated with the admission of other crimes evidence and place strict limitations on the admission of such evidence." *Id.*

Evidence concerning the January 23, 2010, altercation between Petitioner and Mr. Moxley was presented through the testimony of Assistant Fire Chief Johnson and Officer Hubble. As discussed above, Officer Hubble testified that on January 23, 2010, he arrived at Mr. Moxley's residence and observed Mr. Moxley's difficulty in breathing and his struggle to keep the tracheostomy tube inserted in his throat (Tr. 309-12). The house was in disarray, with broken dishes on the floor (Tr. 311). When Hubble asked Petitioner to assist, she refused and said she wanted her father out of the house (Tr. 312-13). Hubble further testified that Petitioner was intoxicated, very aggressive, and very uncooperative (Tr. 313-14, 316). Hubble observed no injuries on Petitioner that night (Tr. 316). Mr. Moxley placed Petitioner under citizen's arrest for disturbance by a drunk, and Officer Hubble took her into custody (Tr. 313, 316, 319-20).

Officer Hubble contacted the Ada Fire Department to assist Mr. Moxley with his tracheostomy tube (Tr. 312). When the fire department personnel arrived, Assistant Fire Chief Johnson found Mr. Moxley was having difficulty breathing and communicating (Tr. 346, 349). Although Mr. Moxley was holding the tube in place in his throat with his fingers, he could not fasten the strap which held the tube in place (Tr. 348). Johnson testified that

Mr. Moxley was shaken and noticeably upset (Tr. 351).

Melinda Moxley testified that Mr. Moxley, her uncle, had diminished physical capability and tired easily (Tr. 385, 400). She testified that Petitioner was present with her at the hospital when a nurse gave instructions on caring for the tracheostomy tube (Tr. 389-90). Petitioner also was advised by medical staff that Mr. Moxley could not live without the tube (Tr. 391).

Melinda Moxley further testified that she was aware of Petitioner's acts of physical violence against Mr. Moxley, and Melinda had urged Petitioner to get treatment for her "disease" (Tr. 400-01). Melinda also stated that in 2008, Petitioner had expressed remorse about attacking Mr. Moxley (Tr. 401). The trial court sustained an objection to the statement concerning the 2008 incident (Tr. 402), and the OCCA found the trial court's ruling cured the error caused by mentioning a possible prior incident of abuse, *Moxley*, slip op. at 6.

At the close of evidence, the trial court issued a limiting instruction directing the jury that evidence of other crimes or bad acts was not to be considered proof of guilt or innocence of the offenses on trial, but was to be considered solely as evidence of "the defendant's alleged intent, knowledge and absence of mistake or accident" (O.R. 150, Dkt. 11-4 at 154). A jury is presumed to follow its instructions. *Weeks v. Angelone*, 529 U.S. 225, 234 (2000). *See also Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.") (internal

quotation marks and citations omitted). This Court finds the evidence admitted at trial was properly admitted under state evidentiary law, and Petitioner was not deprived a fundamentally fair trial. Ground IV of the petition is denied.

## Ground V: Character Evidence

Petitioner alleges in Ground V that her Fourteenth Amendment rights were violated by the admission of evidence of the victim's good character and evidence of her bad character. Respondent alleges this challenge to character evidence is a matter of state law and not proper for federal habeas corpus review.

Petitioner's opening statement made numerous references to her alcoholism, the abuse she suffered at the hands of the deceased, and how she fought back against his abuse on the day in question (Tr. 190-93). State's witnesses then were questioned about Petitioner's demeanor when she was under the influence of alcohol and about the deceased's lack of violence or aggression (Tr. 202, 359-60, 386-87).

Citing Okla. Stat. tit. 12, §, 2404(A), Petitioner maintained on direct appeal that if a defendant presents evidence that the victim was the first aggressor, the prosecution may present evidence of the victim's character for peacefulness. She alleged that in her trial, however, the prosecution presented evidence in its case-in-chief that Petitioner is a bad person and that Mr. Moxley was a peaceable person. Therefore, Petitioner argued, this evidence should not have been allowed. The OCCA denied relief as follows:

> We find . . . there was no plain error in admitting evidence of the victim's character, as Moxley had introduced that issue in her opening statement. *Welch v. State*, 2 P.3d 356, 369 (Okla. Crim. App. 2000); *Maynard v. State*,

625 P.2d 111, 113 (Okla. Crim. App. 1981). The record does not show that Moxley raised her own character as an issue either through defense witnesses or through cross-examination, although it was raised in her statement to police. *Walters. v. State*, 848 P.2d 20, 23 (1993); *Holt v. State*, 774 P.2d 476, 478 (Okla. Crim. App. 1989); *Saumty v. State*, 503 P.2d 571, 575 (Okla. Crim. App. 1972). Any error in admitting the evidence does not rise to the level of plain error. Moxley has not shown she was prejudiced by the testimony. Admission of the evidence was harmless, and did not constitute a miscarriage of justice or a substantial violation of a constitutional or statutory right. *McIntosh v. State*, 237 P.3d 800, 803 (Okla. Crim. App. 2010).

*Moxley*, slip op. at 6-7.

Challenges to state evidentiary rulings are a matter of state law for the state court to decide, unless the ruling deprives a petitioner of a fundamentally fair trial. *See Grant*, 727 F.3d at 1013; *Duckett*, 306 F.3d at 999. In Oklahoma, if the character of the victim is brought forth by the defense in opening statements, the State can present evidence of the victim's good character at trial. *See Welch v. State*, 2 P.3d 356, 369 (Okla. Crim. App. 2000) (holding that when defense counsel told the jury in opening statement that the defendant was serving a prison sentence, testimony from a State's witness that defendant participated in prison rodeos was not improper); *Maynard v. State*, 625 P.2d 111, 113 (Okla. Crim. App. 1981) (holding that when defendant places other crimes evidence before the jury in opening statement, he cannot complain when the State's witnesses testify regarding that evidence). *See also Lott v. Trammell*, 705 F.3d 1167, 1199 (10th Cir.) (recognizing that Oklahoma's invited error rule is firmly established), *cert. denied*, __ U.S. __, 134 S.Ct. 176 (2013).

This Court is bound by Oklahoma's interpretation and construction of its own evidentiary rules. *Dennis v. Poppel*, 222 F.3d 1245, 1257 (10th Cir. 2000), *cert. denied*, 534

U.S. 887 (2001). Therefore, to the extent a petitioner claims the state court erroneously interpreted and applied state law, habeas relief cannot be granted. *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999).

Here, the Court finds the testimony by the State's witnesses concerning Petitioner's behavior and demeanor when she was drinking did not prejudice her, in light of her defense that she was an alcoholic. The Court further finds the testimony did not have a substantial and injurious effect on the outcome of the trial, and Petitioner was not denied a fundamentally fair trial. The OCCA's decision of this claim was consistent with Supreme Court law, and the OCCA's determination of the facts presented at trial was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). This ground for habeas relief is denied.

**Grounds VI and VII: Jury Instructions**

Petitioner alleges in Ground VI of the petition that she was denied a fair trial by the trial court's not allowing a jury instruction for the lesser-included offense of manslaughter. She claims in Ground VII that she was deprived of her right to an instruction on voluntary intoxication. Respondent alleges these claims do not raise issues which are proper for federal habeas review.

In a habeas corpus proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy*, 2 F. 3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994). "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they

are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"

*Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981), *cert. denied*, 525 U.S. 852 (1998)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995).  Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

### *Manslaughter Instruction*

Petitioner alleges the trial court abused its discretion in failing to instruct on second degree manslaughter.  The OCCA found the evidence did not support a lesser-included offense under Oklahoma law, and there was no merit in this claim:

> We find . . . the trial court did not abuse its discretion in refusing to instruct on second degree manslaughter.  *Barnett v. State*, 271 P.3d 80, 86 (Okla. Crim. App. 2012).  The trial court should instruct on every degree of homicide supported by the evidence. *Barnett*, 271 P.3d at 86; *McHam v. State*, 126 P.3d 662, 669 (Okla. Crim. App. 2005).  Second degree manslaughter is a "killing of one human being by the act, procurement or culpable negligence of another" which is not murder, first degree manslaughter, or excusable or justifiable homicide.  Okla. Stat. tit. 21, § 716.  "Culpable negligence" is defined as "the omission to do something which a reasonably careful person would do, or the lack of the ususal ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions."  OUJI-CR 2d 4-104.  The evidence did not support an instruction for this offense.  *Revilla v. State*, 877 P.2d 1143, 1149-50 (Okla. Crim. App.

1994); *Freeman v. State*, 681 P.2d 84, 86 (Okla. Crim. App. 1984).

*Moxley*, slip op. at 7.

Petitioner claimed her father called her a "stupid bitch" and started hitting her, and she responded by grabbing his tracheostomy tube in an act of self defense (State's Exhibit 33). The evidence, however, showed that Petitioner knew the danger of removing Mr. Moxley's tube, with two witnesses testifying Petitioner knew her father could not breathe and could die if the tube were removed. *Moxley*, slip op. at 8.

"[A] petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser-included offense.'" *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)), *cert. denied*, 510 U.S. 1120 (1994).

### *Voluntary Intoxication Instruction*

Petitioner claims the trial court committed reversible error when it denied her request for an instruction on voluntary intoxication. The OCCA denied relief on this claim:

> We find . . . the trial court did not abuse its discretion in denying Moxley's request for an instruction on voluntary intoxication. *Cuesta-Rodriguez v. State*, 241 P.3d 214, 223 (Okla. Crim. App. 2010). Voluntary intoxication is a partial defense to intent crimes--the defendant must establish a prima facie case that she was too intoxicated to form the specific intent required to complete the crime. *Cuesta-Rodriguez*, 241 P.3d at 223. Moxley was charged with second-degree murder. This is not a specific intent crime. *Conover v. State*, 933 P.2d 904, 916 (Okla. Crim. App. 1997). Because there is no specific intent, voluntary intoxication is not available as a defense.

*Moxley*, slip op. at 7-8 (footnote omitted).

This Court finds that based on state law, Petitioner was not entitled to the desired instruction. In addition, Petitioner has failed to show that the denial of this instruction resulted in a conviction that violated due process.

The Court further finds the OCCA's decisions regarding Petitioner's claims concerning jury instructions for second degree manslaughter and for voluntary intoxication were not contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Petitioner's claims in Grounds VI and VII are denied.

**Ground VIII: Sufficiency of the Evidence**

Petitioner next argues, as she did on direct appeal, that there was insufficient evidence to support her conviction for second degree murder, because she did not cause Mr. Moxley's death. The OCCA found no merit in this ground for relief:

> We find . . . that, taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Moxley's acts caused the victim's death. *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004). The State had to prove the death of a human, caused by the defendant's conduct which (a) was imminently dangerous to another person, (b) evinced a depraved mind in extreme disregard of human life, and (c) was not done with the intention of taking the life of any particular person. Okla. Stat. tit. 21, § 701.8 (2001); OUJI-CR 2d 4-91. Moxley argues the State failed to prove she acted with a depraved mind in extreme disregard for human life.

*Moxley*, slip op. at 8.

Furthermore, as discussed above in Ground I, the OCCA found that several witnesses testified about Petitioner's admission that she had pulled out her father's tracheostomy tube, and the jury watched the videotape of her admitting she had pulled out the tube. Two witnesses testified Petitioner knew her father needed the tube to breathe. Additional

testimony showed Petitioner called 911 but offered no further help to Mr. Moxley. Mr. Moxley's cause of death was asphyxia resulting from the removal of his tracheostomy tube. Finally, the OCCA found the evidence did not support Petitioner's claim that other, intervening factors could have caused the victim's death. *See id.*

In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

"[W]here a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA adds an additional degree of deference, and the question becomes whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citations and internal quotation marks omitted), *cert. denied*, 553 U.S. 1079 (2008). This standard is called "deference squared." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012) (quoting *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007)). "Even if a state court

resolves a claim in a summary fashion with little or no reasoning, [the habeas court] owe[s] deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The elements of Second Degree Murder are:

First, the death of a human;

Second, caused by conduct which was imminently dangerous to another/other (persons);

Third, the conduct was that of the defendant(s);

Fourth, the conduct evinced a depraved mind in extreme disregard of human life;

Fifth, the conduct is not done with the intention of taking the life of any particular individual.

Instruction No. 4-91, OUJI-CR (2d) (O.R. 155; Dkt. 11-4 at 159). This instruction includes the following definitions:

You are further instructed that a person evinces a "depraved mind" when he engages in imminently dangerous conduct with contemptuous and reckless disregard of, and in total indifference to, the life and safety of another.

You are further instructed that "imminently dangerous conduct" means conduct that creates what a reasonable person would realize as an immediate and extremely high degree of risk of death to another person.

*Id*. Petitioner argued on direct appeal that the State failed to show her conduct evinced a

depraved mind.

Here, the evidence of Petitioner's guilt was overwhelming. On January 23, 2010, she pulled out Mr. Moxley's tracheostomy tube and witnessed the effect on him when it became dislodged (Tr. 309-20). Petitioner knew her father could not live without the tube inserted in his throat (Tr. 391). The jury heard Petitioner admit in her statement to Detective Jackson that on February 14, 2010, that she grabbed the strap around Mr. Moxley's neck, and his tube came out (States's Exhibit 33). She also said Mr. Moxley tried to reinsert the tube, but was unable to do so. *Id.*

Considering her knowledge from the January incident, Petitioner was aware that her father was no threat to her when he was unable to breathe. With this knowledge, Petitioner tore the strap and then did nothing to reinsert the tube or assist her father in reinserting it. Her conduct in removing the tube was imminently dangerous to Mr. Moxley, and it created a high probability of death. Despite evidence of a struggle or altercation at the Moxley home, the jury obviously resolved any credibility issues in favor of the prosecution, and this Court must defer to that resolution. *Jackson*, 443 U.S. at 326.

After careful review of the record, the Court finds that but for Petitioner's actions in removing Mr. Moxley's tracheostomy tube, he would not have died. The State proved the elements of the crime, and the OCCA's determination of this claim was not contrary to, or an unreasonable application of Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). Furthermore, the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. §

2254(d)(2).  This ground for habeas corpus relief fails.

**Ground IX:  Ineffective Assistance of Trial Counsel**

Petitioner alleges in Ground IX that trial counsel was ineffective in failing to object to Dr. Byron Curtis's testimony, as discussed in Ground II, and in failing to object to the admission of character evidence discussed in Ground V.  The OCCA denied relief on this claim:

> We find . . . counsel was not ineffective.  Moxley claims counsel was ineffective for failing to challenge Curtis's evidence, and for failing to object to character evidence.  Moxley must show that counsel's performance was deficient and that she was prejudiced by counsel's deficient performance. *Wiley v. State*, 199 P.3d 877, 878 (Okla. Crim. App. 2008); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  For the Court to reach Moxley's claim of deficient performance, she must show she was prejudiced by counsel's acts or omissions. *Williams v. Taylor*, 529 U.S. 362, 393 (2000); *Strickland*, 466 U.S. at 697.  We found . . . that Curtis's evidence was properly admitted.  We found . . . that evidence of the victim's good character was properly admitted. We further found . . . that evidence of Moxley's character, if admitted erroneously, was harmless. Moxley cannot show she was prejudiced by counsel's omissions.

*Moxley*, slip op. at 8-9.

"There is a strong presumption that counsel provided effective assistance of counsel, and petitioner has the burden of proof to overcome that presumption."  *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989).  To prevail on her claim of ineffective assistance of counsel, Petitioner must show that (1) her counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different," *id*. at 694.

The Supreme Court has since expanded the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original).

This Court finds the OCCA's application of *Strickland* was not unreasonable. Failure to present meritless arguments does not constitute ineffective assistance of counsel. *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 691-96); *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002). Habeas relief cannot be granted for this claim.

## Ground X: Cumulative Error

Finally, Petitioner alleges the cumulative result of the preceding errors requires reversal or sentence modification. The OCCA, however, found there was no cumulative error:

> We found error in admission of the 911 tape through Detective Jackson . . . and determined that error was harmless. We found that any error in admission of character evidence . . . was harmless. The trial was fairly conducted, these

errors did not require relief separately, and they do not require relief in accumulation. *Brumfield v. State*, 155 P.3d 826, 840 (Okla. Crim. App. 2007).

*Moxley*, slip op. at 9.

"Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990), *cert. denied*, 522 U.S. 844 (1997)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated."). This Court finds the OCCA's decision on this issue was not contrary to, or an unreasonable application of, Supreme Court law. Therefore, this claim also must be denied.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). She also has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and she is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 10th day of October 2017.

James H. Payne
United States District Judge
Eastern District of Oklahoma